IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **MOHAMED NOOR ADAM** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No: 1:14cv203 AJT/TRJ |
| | ) |
| **TRANS UNION, LLC.** | ) |
| Defendant. | ) |

### COMPLAINT

Plaintiff Mohamed Noor Adam ("Plaintiff"), by and through counsel, brings this Complaint against Defendant TransUnion, LLC ("Defendant" "TransUnion") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1. Plaintiff Mohamed Noor Adam is a victim of inaccurate credit reporting, improper maintenance of credit reporting files, and poor investigation procedures, at the hands of TransUnion. Despite the fact that the other credit reporting agencies were able to solve his problems, TransUnion stood alone in failing to correct credit reporting mistakes that allowed an unrelated mortgage to remain on the Plaintiff's credit file. Worse yet, TransUnion advised him that it would investigate his dispute and get back to him with the results and on two separate occasions failed to honor that promise. As a result, TransUnion failed to correct the erroneous trade line and continued to publish it to the mortgage lender who had been requested to approve him for a home mortgage. This came at a most inopportune time for Mr. Adam in that while he was trying to correct the errors on his TransUnion credit file, the cost of homes and the interest rate to finance such purchases was rising rapidly. Plaintiff has been unable to purchase a home because

of TransUnion, and he suffered and continues to suffer significant economic damage in the manner of housing price acceleration and interest rate cost acceleration. He has also suffered significant emotional distress damages as result of TransUnion's violation of law.

### Parties

2. Plaintiff Mohammed Noor Adam is a natural person and is a resident and citizen of the state of Virginia. He is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because he is an individual. Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Mohamed Noor Adam.

3. Defendant TransUnion LLC, (hereinafter "TransUnion"), is a foreign limited liability company which maintains a registered agent in the City of Richmond. Trans Union is a consumer reporting agency, as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties. Trans Union regularly conducts these business activities in Virginia by providing credit reports and other products to consumers and businesses in the Eastern District of Virginia, Alexandria Division.

### Jurisdiction & Venue

4. This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681(p). Venue is proper in this jurisdiction. Defendant maintains the office of a registered agent in the Eastern District of Virginia and the forum is a convenient for the adjudication of his claims.

## Factual Allegations

5. In November 2012, Plaintiff reviewed his credit reports, and he noticed that information that did not relate to him appeared on his credit file. Specifically, the address 2208 Willow Crest Circle, Lawrenceville GA 30044 and a mortgage account for America's Servicing Company partial account number 106135100XXXX. Because Plaintiff did not open or authorize a mortgage account or live at the address identified, he believed that he was the victim of identity theft.

6. On November 12, 2012, Plaintiff reported the identity theft to Officer Zaimis of the Prince William County Police department and his case number was 13-199113. Next, Plaintiff notified the FTC and completed the identity theft affidavit provided by the FTC. On the FTC affidavit, Plaintiff identified the Americas Servicing Company account as fraudulent, provided the information related to the Prince William County police, signed the document in front of a notary, and provided copies of his driver's license and social security card.

7. Next, Mr. Adam mailed a credit dispute package containing the FTC affidavit to the credit reporting agencies including the Defendant TransUnion. Mr. Adam had provided everything that he needed to provide in order to identify him, the fraudulent account, and have TransUnion block the account for fraud.

8. On November 27, 2012, TransUnion responded by sending Mr. Adam a card indicating that TransUnion had added an extended fraud alert to his TransUnion Credit file. Under the terms of the FCRA, an extended fraud alert would remain on his TransUnion file for seven years.

9. Based upon the statutory provisions of the FCRA, TransUnion could only add the extended fraud alert if it received a qualifying "identity theft report" pursuant to the FCRA at 15 U.S.C. §1681c-1(b)(1). Because TransUnion added the extended fraud report after receiving the Prince William County police report, TransUnion has admitted that the Prince William County police report meets the statutory guidelines for an identity theft report.

10. In addition, TransUnion's small note card notice of the extended fraud alert seems to be an effort to circumvent the detailed notice requirements of the FCRA as it relates to the FCRA identity theft rights of consumers. TransUnion has knowledge of the law and the detailed requirements for notification, yet it chooses to not provide the proper notices and instead offer the Plaintiff options to receive his rights. TransUnion's decision to provide the notices in this fashion was intentional and conscious and deprives all consumers of their statutory rights, further discovery is necessary as to the policies and procedures related to the November 27, 2012 card letter as well as the scope of consumers affected.

11. On November 29, 2012, TransUnion provided what would be the only response to Mr. Adam's initial credit dispute package. In its letter TransUnion stated in part, that it received the identity theft block request, but it declined to invoke the block on the information requested. On the one hand TransUnion appeared to recognize the validity of the identity theft report for adding the extend fraud alert, but on the other hand, TransUnion refused to recognize the validity of the same identity theft report by blocking the identity theft related information. TransUnion's policy in this regard is also intentional and willful because it costs little or nothing to add fraud alerts to consumer

4

credit files, but blocking past due disputed identity theft accounts makes furnishers upset and ultimately the furnishers are the actual paying customers of TransUnion.

12. TransUnion's November 29, 2012 correspondence listed numerous baseless and disingenuous reasons that it believed it could deny the block request *e.g.* Mr. Adam might have requested the block in error; Mr. Adam misrepresented a material fact; or that TransUnion determined that he obtained possession of the goods. Based upon the manner that TransUnion investigates disputes, TransUnion will have no proof that it possibly could have made any of these determinations just two days after sending a letter that purports to add a seven year extended fraud alert.

13. After receiving the November 29, 2012 letter from TransUnion, Plaintiff did not receive any further communication from TransUnion, which is in violation of the notice of results of investigation requirements of the FCRA. As TransUnion in the past has claimed that results letters were sent, when consumers have alleged that they never received the letters, discovery is necessary as to whether TransUnion has any proof that it actually sends out notices of the results of reinvestigations to consumers in situations like this where a previous letter has already been sent to a consumer.

14. Frustrated that TransUnion had not taken the disputed America's Servicing Company mortgage off of his credit report. Mr. Adam sent a second credit dispute package to TransUnion.

15. Unfortunately for him the results were the same, on January 28, 2013, TransUnion sent Mr. Adam the exact same letter it sent him in November 2012. TransUnion would not invoke the identity theft blocking provisions, and it claimed that it would investigate the dispute and get back to Mr. Adam with the results.

16. Just as had occurred previously, TransUnion provided no further contact with him, which left Mr. Adam feeling frustrated and confused.

17. As time moved on through the year, Mr. Adam would learn that the other two credit reporting agencies had removed the disputed America's Servicing Company account from his credit report. Equifax also failed to send the results of the credit dispute investigation by claiming that it could not locate Mr. Adam's credit file. Based upon subsequent developments, Equifax's representation was proven untrue because the file was located and the dispute account was removed from the Plaintiff's credit file.

18. Hoping that his credit problems were behind him, Mr. Adam applied for a mortgage in November 2013. Given the one year wait from when he started the process to the present Mr. Adam did not want to wait any further as house prices and interest rates were continuing to climb.

19. On November 26, 2013, the mortgage company acquired a tri-merge credit report. On the report TransUnion was the only credit reporting agency that reported the America's Servicing Company account. In addition, the America's Servicing Company account had numerous 30 day late payments. As a result of TransUnion's credit reporting, Mr. Adam would not be able to proceed with the application. A letter from the branch manager David Bridges stated in part, "Your credit report contains a mortgage with ASC. This mortgage has severe delinquencies and "rolling" 30-day late payments. Based on my review, this is the sole reason you would not qualify for a mortgage."

20. Despite multiple attempts, Mr. Adam could not correct this error on his TransUnion credit report through the dispute process. TransUnion has twice ignored his identity theft report, twice failed to communicate the results of any investigation, and

caused him significant damage by causing the inaccurate trade line to publish to the mortgage broker.

21. In addition, discovery is necessary as to whether Mr. Adam was the victim of a mixed credit file where a consumer with a similar name has credit information appearing on the Plaintiff's credit report. These violations are particularly egregious for TransUnion because they have been on notice for years in the form of punitive damage jury verdicts that TransUnion's improper credit account matching methods are systemic problems and cause significant damages for consumers.

22. Given the standard practice in the credit reporting agency, TransUnion likely conducted no independent investigation of the accuracy of the account that appeared on Plaintiff's credit file and simply relied on the furnisher without a meaningful investigation of the dispute or examination of its data. TransUnion is on notice from other cases that such a system is unreliable, not a proper procedure for maintaining maximum possible accuracy of credit information, and certainly not reasonable when conducting a reinvestigation of a consumer's dispute.

23. Plaintiff suffered damages as a result of TransUnion's inaccurate reporting of his credit history. Plaintiff could not get a mortgage or purchase a home that he otherwise would have been able to purchase. Plaintiff also suffered frustration, aggravation, and upset based upon Trans Union's actions.

**COUNT I**
**Fair Credit Reporting Act**
**15 U.S.C. §1681i**

24. Plaintiff incorporates paragraphs one (1) to twenty-three (23) as if fully stated herein.

25. Defendant TransUnion has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. TransUnion is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681i by failing to conduct reasonable investigations into accounts that Plaintiff disputed related to the theft of his identity.

26. TransUnion violated its duties to conduct a reasonable investigation on two occasions after receiving a credit dispute package from Mr. Adam. Despite the fact that Mr. Adam filed a police report, identified the disputed America's Servicing Company account, and completed the FTC fraud affidavit, TransUnion refused to remove the account from his credit file.

27. Mr. Adam provided a valid police report to TransUnion on two different occasions, and TransUnion even added an extended fraud alert to Mr. Adam's credit file, which requires a valid identity theft report prior to adding the fraud alert. TransUnion never conducted a reasonable investigation into the circumstances surrounding the identity theft, and failed to consider the relevant information provided by Mr. Adam, as demonstrated by the fact that the disputed account remained on the Plaintiff's credit file.

28. Mr. Adam suffered actual damages including time spent addressing the problem, improper denial of access to credit, failure to purchase a home and get a mortgage, and emotional distress damages. In addition, punitive damages are necessary based upon TransUnion's reckless disregard for victims of identity theft and the restriction of investigation procedures that are known to result with inaccurate identity theft information remaining on victims' credit files.

## COUNT II
## Fair Credit Reporting Act
## 15 U.S.C. §1681e(b)

29. Plaintiff incorporates paragraphs one (1) to twenty-eight (28) as if fully stated herein.

30. Defendant TransUnion has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. TransUnion is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the plaintiff's credit report.

31. TransUnion willfully and/or negligently violated the Fair Credit Reporting Act at 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information reported about Mr. Adam. TransUnion had actual knowledge of the identity theft, the police information, and case number, yet TransUnion continued to allow the information related to the identity theft to remain on his credit report.

32. TransUnion's publishing of the inaccurate information was a substantial factor in the denial of credit to Mr. Adams and his inability to purchase a home when a TransUnion report was acquired on November 26, 2013. Additional discovery is necessary as to other inaccurate credit reports and situations in which TransUnion provided information that resulted in unfavorable account reviews or other derogatory credit references.

33. In addition, additional discovery is necessary as to whether Mr. Adam is the victim of a mixed credit file. Given TransUnion's previous history of dealing with mixed credit files and knowledge of the problems, substantial punitive damages will be warranted in this case as not only will they have mixed another consumer's credit information, but they will have conducted improper investigations of its credit data as well.

34. Mr. Adam suffered damages including: the denial of a credit, loss of time working to restore his credit; inability to purchase a home, loss the use of his good name; and emotional distress caused by TransUnion's violations of the FCRA.

## COUNT III
### Fair Credit Reporting Act
### 15 U.S.C. §1681c-2

35. Plaintiff incorporates paragraphs one (1) to thirty-four (34) as if fully stated herein.

36. In November 2012 and January 2013, TransUnion received copies of Mr. Adam's police report that he filed with the Prince William County police department as part of his dispute of credit information. Mr. Adams informed TransUnion that he did have an account with Americas Servicing Company.

37. TransUnion acknowledged the validity of the Prince William County, Virginia police report when it placed an extended fraud alert on Mr. Adam's credit file after receiving the document.

38. Pursuant to 15 U.S.C.§1681c-2, TransUnion had a duty to take certain actions including but not limited to blocking the identity theft related accounts from Mr. Adam's credit file within four business days after receiving his letter.

39. TransUnion both negligently and willfully failed to comply with the statutory requirements related to the block of information resulting from the identity theft. As identified in the factual averments, Mr. Adam provided a valid police report on multiple occasions and thereafter TransUnion both negligently and recklessly disregarded its duties under the FCRA. Conversely, the other two credit reporting agencies (Equifax and Experian) did correct the error.

40. Punitive damages are also warranted because TransUnion has implemented a policy in which it recklessly ignores police identity theft reports provided by consumers when the reports clearly meet the requirements of the FCRA as demonstrated by the fact that it happened to Mr. Adam on multiple occasions.

41. Mr. Adam is also entitled to actual damages for its violation of the FCRA including compensatory damages for emotional distress, loss of credit access, and such other damages awarded by a jury.

### Prayer for Relief

Wherefore, the plaintiff prays that the Court award the following relief:

a) compensatory damages against Trans Union;

b) punitive damages based upon Trans Union's repeated violations of the FCRA;

c) statutory damages against Trans Union based upon multiple violations of the FCRA;

d) interest, pre-judgment interest, costs and reasonable attorneys' fees incurred by the Plaintiff;

e) all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury as to all issues against all defendants.

                                                              Respectfully submitted
                                                              Mohammed Adam

                                                              By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11790 Sunrise Valley Dr., Suite 103
Reston, Virginia 20191
(571) 313-0412
Fax:(571) 313-0582